THE LAW OFFICES OF EMERSON WHEAT, APC
EMERSON WHEAT, ESQ.
CA BAR NO. 277456
550 West C Street, Suite 620
San Diego, CA 92101
(619) 876-1633
emersonwheat@gmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA
# (THE HONORABLE MARILYN L. HUFF)

| United States of America, | ) Case No. 21-CR-1285-H |
|---|---|
| Plaintiff, | ) |
| v. | ) **Defendant Elizabeth Bautista's Sentencing Memorandum & Motion for Downward Departures** |
| Elizabeth Bautista, | ) |
| Defendant. | ) Date: December 13, 2021 |
| | ) Time: 9:00 a.m. |

## I.
## 18 U.S.C. § 3553 Factors

1. **The Nature and Circumstances of the Offense**

Agents arrested defendant Elizabeth Bautista and her brother upon entry at the Tecate Port of Entry on suspicion of importing narcotics on April 3, 2021. Agents discovered 1,096-grams fentanyl, 11.54-kilograms methamphetamine (actual),[1] and approximately 2.4-kg. heroin. The Converted Drug Weight is 235,940-kilograms.

---

[1] The Plea Agreement provides for a 10% reduction due to packaging for the methamphetamine, and then a calculation based on the laboratory report for the sample. The calculation is: 13.22-kg. (mix) x 0.9 (packaging) = 11.898 x. 0.97 (purity) = 11.54-kg. (actual).

1

21-CR-1285-H

Ms. Bautista accepted responsibility under *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976). She was aware of a high probability that a known drug trafficker (who borrowed her vehicle in Mexico) loaded an unknown type or quantity of drugs in the vehicle, and she deliberately avoided learning the truth before crossing the vehicle into the United States. She also neglected to tell her brother about any of these circumstances that caused her to suspect drugs could have been loaded in the vehicle.

Ms. Bautista saved the government and Court considerable time and resources by not litigating her case at any point and pleading guilty to the offenses charged.

2. **History and Characteristics of Ms. Bautista**

Elizabeth Bautista is a 42-year old U.S. citizen from San Diego that has been living in Reno since she was a teenager. She is a mother of four and a grandmother of 10. She was a single mother as a teenager and never was able to complete her high school education because of her parenting responsibilities. With that said, she recently started a GED program with her son while on bail. Ms. Bautista's verifiable work history is mostly from the past year, as she spent most of her life raising her children and helping care for her grandchildren. She's been employed during her pretrial release, but has lost jobs due to the bail requirements. She understands that her status as a convicted felon will make her life more difficult, particularly with respect to employment. Ms. Bautista desperately

wants to get her education, to work, and to put this unfortunate matter in her past.

Ms. Bautista's life has been marred by significant trauma during her youth and early teenage years. *See* Pre-Sentence Report ("PSR") at ¶¶ 57- 59. This horrific experience destroyed her family, and she continues to be re-traumatized by lack of support from many family members that shunned her for telling the truth. Some of these family members should have protected her in the first place. These experiences at such a pivotal time in her young life led Ms. Bautista abuse drugs. She struggled with methamphetamine for approximately six years, but ultimately got clean 16 years ago. She is immensely proud of her continued sobriety. This also demonstrates her ability to make necessary long-term changes in her life.

Ms. Bautista recognizes that she is in this predicament because of the people she associated with and chose to trust despite knowing that they were involved with drug trafficking. Her mother suggested that she would go out of her way to help others, and opined that this quality led to her daughter's involvement in this offense. PSR at ¶ 62. Whatever led her to drive the vehicle over the border in spite of her suspicions, Ms. Bautista is embarrassed and ashamed of her actions and vows to make much better decisions concerning who she associates with in the future.

3. **The Need to Reflect the Seriousness of the Offense, Just Punishment, Deterrence, and Protection of the Public**

Ms. Bautista committed a serious offense. She imported drugs, although she never agreed to do so. She was a minor participant.

She quickly accepted responsibility for her criminal conduct. Just punishment can be achieved with a sentence below the advisory Guidelines, as recommended by U.S. Probation. PSR at ¶ 109. Ms. Bautista is deterred by this experience, and yet the need for deterrence is harder to attain given that she did not agree to import drugs for some fixed amount of money. Instead, she associated with drug traffickers and misplaced her trust in the wrong type of individuals. A 15-month prison sentence provides adequate individual and general deterrence under these circumstances. Ms. Bautista does not pose a threat to the public.

4. **The Need to Provide Needed Educational and Vocational Training, or Medical Care**

Ms. Bautista hopes to earn her GED either before starting her sentence or when she is in custody, and perhaps will pursue college courses if the opportunity presents itself. She wants to work and continue to support herself and help her children and grandchildren in ways that she never experienced. She suffers from lumbar arthritis, high blood pressure, and anxiety. She is open to treatment for all of these medical issues.

5. **The Kinds of Sentences Available, the Sentencing Range, and Policy Statements, and Avoidance of Sentencing Disparities**

Ms. Bautista recommends a prison sentence based on the seriousness of her criminal conduct, although the nature and circumstances of the offense and her history and characteristics

4

support her request for a below-Guidelines range sentence of 37 to 46-months in custody.

No disparity results from the recommended sentence of 15-months custody, which is consistent with other sentences imposed on similarly-situated defendants.

- *United States v. Kimberly Fuentes-Ramirez*, 19-CR-3842-H, imported 29.8-kg. cocaine and 22.52-kg. heroin; AUSA recommendation 27-months; 21-months imposed.

- *United States v. Salador Soto III*, 20-CR-768-H, 14.06-kg. meth. (mix); 18-months imposed.

- *United States v. Emily Ruth Tilapa*, 19-CR-3245-H, imported 42.22-kg. meth. (mix); 18-months imposed.

- *United States v. Christian Miguel Gonzalez*, 19-CR-4627-H, imported 21.3-kg. meth. (actual), AUSA recommendation 46-months; 24-months imposed.

- *United States v. Sandra Bonillas*, 19-CR-2072-H, imported 15.1-kg. meth. (actual), Criminal History Category IV, AUSA recommendation 70-months; 30-months imposed.

- *United States v. Andres Trevino-Troncoso*, 20-CR-3556-H, possessed with intent to distribute 551-grams fentanyl and admitted successful prior transactions, Criminal History Category III, AUSA recommendation 30-months; 30-months imposed.

- *United States v. Nathan Shawn Martinez*, 19-CR-2770-H, imported 48.5-kg. meth. (actual), AUSA recommendation 37-months; 18-months imposed.

- *United States v. Arturo Yat-Lopez*, 19-CR-3224-H, imported 25.8-kg. meth. (actual), AUSA recommendation 37-months; 30-months imposed.

The overarching directive of 18 U.S.C. § 3553(a) is that the punishment imposed is sufficient—but not greater than necessary—according to the factors outlined above. A 15-month sentence meets the criteria from 18 U.S.C. § 3553(a).

## II.
## U.S.S.G. Adjustments and Departures

1. **Minor Role (U.S.S.G. § 3B1.2)**

Ms. Bautista is substantially less culpable than the average participant and requests a minor role adjustment according to the factors outlined by the U.S. Sentencing Commission. Moreover, U.S. Probation also recommended a minor role reduction based on her participation. PSR ¶¶ 33- 34.

**(i) Defendant's understanding of the scope and structure of the criminal activity:**

Ms. Bautista lacked any appreciation for the scope and structure of the criminal activity. She knew only of the recruiter because this person offered her the opportunity to import drugs for money. She declined this opportunity, but continued to be contacted by this individual because of the familial connection. PSR at ¶ 21. She never agreed to import drugs, and thus never met others within the organization beyond receiving her vehicle from one of the recruiter's associates. However, she did not know who this person was or have any information about his involvement. Ms. Bautista did

not ask additional questions about the drug-importing business because she was not interested in this type of work.

**(ii) Defendant's participation in planning or organizing the criminal activity:**

Ms. Bautista did not plan or organize the criminal activity in any fashion. Instead, she loaned her vehicle to a drug trafficker in Mexico because he apparently needed to move furniture. Unfortunately, the vehicle was not returned at the time and place they agreed upon. Ms. Bautista worried that this person may have taken the opportunity to load drugs in her vehicle, but she never confronted him about it or took any steps to try and discover if her suspicions were well-founded. She accepted this risk and hoped for a better outcome, and yet her intuition proved to be accurate. She did not cross the vehicle for this individual on any prior occasion or do anything else to further his criminal objectives. This individual never entrusted Ms. Bautista with details of his plan because she declined the job offer.

**(iii) Defendant's exercise of decision-making authority or ability to influence the decision-making authority:**

Ms. Bautista lacked decision-making authority and lacked the ability to influence the recruiter. Her decision to decline participation in this offense was ignored by the recruiter. She demanded her car be returned to her the same night she loaned it to this participant, and yet her demands were ignored. Instead, her vehicle was driven into the border line and she was told to retrieve it there on the morning of her arrest. Another associate of the recruiter drove the vehicle to the

7

border but she did not interact with this person. She did not ask questions or receive any additional information, and she drove over the border without telling the agent at the primary inspection booth about any of these circumstances or her suspicions.

**(iv) The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts performed and the responsibility and discretion in performing those acts:**

Ms. Bautista drove a vehicle over the border after loaning it to a known drug trafficker. She did not take any other steps to facilitate the commission of the offense—like burning the plates—and did not have any other instructions to follow. The recruiter knew where to find her if she had been successful, but there was no agreed-upon meeting with the recruiter in the United States. Ms. Bautista had only the discretion to accept her vehicle once it was returned to her and to cross the border. She regrets that she did not simply walk away and allow the recruiter or his associate to deal with her vehicle in the border line.

**(v) Defendant's potential benefit from the criminal activity:**

Ms. Bautista was not promised any money. When she declined the job offer she understood that she could earn money for her participation, but she was not interested in this type of work. She also lost her vehicle to forfeiture.

Ms. Bautista was substantially less culpable that the average participant to this offense and she requests a minor role adjustment.

## 2. Combination of Circumstances (U.S.S.G. § 5K2.0)

Ms. Bautista requests this Court impose a departure based on a combination of circumstances not adequately taken into consideration by the Guidelines.  U.S.S.G. § 5K2.0.

The circumstances of Ms. Bautista's involvement warrant a departure under the Guidelines.  She did not agree to import drugs and yet did not take adequate steps to confirm her suspicions before entering the United States.  She did not know the type, quantity, or purity of drugs imported and lacked the ability to control these variables, and this supports a departure under *United States v. Mendoza*, 121 F.3D 510, 516 (9th Cir. 1997).  This offense also represents aberrant behavior by Ms. Bautista under U.S.S.G. § 5K2.20 because she had been living a law-abiding life and had not been associated with drug trafficking.

Another circumstance not adequately considered by the Guidelines are the collateral consequences flowing from the fact of Ms. Bautista's felony conviction, including difficulty getting hired, retaining work, or even being precluded from employment in certain fields.  This is a tremendous consequence considering her lack of a high school education, employment history, or other job skills.  Ms. Bautista is only 42-years old and has at least a couple of decades to remain in the workforce.  She already experienced losing her employment due to scheduling conflicts with her court-ordered programming, and this is surely going to reoccur in the years ahead.

Ms. Bautista will be ineligible for unemployment and public assistance benefits, Medi-Cal, and faces possible denial of housing rentals due to her status as a convicted felon. Finally, she lost her vehicle to forfeiture because it was used to import narcotics.

All of these circumstances support Ms. Bautista's request for a combination of circumstances departure under U.S.S.G. § 2K2.0.

3. **No Fine Should Be Imposed**

A fine should not be imposed in this case. Ms. Bautista is indigent. She qualified for appointed counsel. The financial disclosures in the PSR demonstrate that she earns insufficient income to justify the imposition of a fine.

### III.
### 18 U.S.C. § 3553(a) Variance

Ms. Bautista requests a downward variance based on all of the circumstances detailed above.

### IV.
### Request for a Self-Surrender Date

The Federal Bureau of Prisons' ("BOP") Inmate Security Designation scoring system reduces the score of an inmate by 3-points for "Voluntary Surrender."[2]

> This item allows for the subtraction of three points from the Security Point Total, Item 15, when the Judgment indicates the inmate was allowed to voluntarily surrender. For purposes of this item, voluntary surrender means the

---

[2] *See* U.S.D.O.J./ Fed. B.O.P., Program Statement No. P5100.08, ch. 4, pg. 5 (Sept. 12, 2006): *available at* http://www.bop.gov/policy/progstat/5100_008.pdf (last visited Nov. 29, 2021).

10

21-CR-1285-H

inmate was not escorted by a law enforcement officer to either the U.S. Marshals Office or the place of confinement. Additionally, this item applies only to post-sentencing voluntary surrender, ***and does not include cases where the inmate surrendered to the U.S. Marshals on the same day as sentencing***.

*Ibid.* (emphasis added).

Ms. Bautista requests a self-surrender date six to eight weeks after the sentencing hearing. This will enable her to lower her security classification scoring, to spend the holidays with her family, and to attend to her remaining responsibilities before serving the sentence imposed. Counsel contacted AUSA Forrest and she is not opposed to a self-surrender date so long as Ms. Bautista remains compliant with the terms of her pretrial release.

## V.
## Conclusion

Defendant Elizabeth Bautista respectfully requests that this Court impose a 15-month sentence and three-years supervised release as to each Count (to be served concurrently), no fine, and a $300 special assessment. She requests that this Court recommend her designation at FCI Dublin to facilitate family visitation. Finally, she asks for a self-surrender date of approximately six to eight weeks from the date of sentencing.

Respectfully submitted,

Dated: <u>29 November 2021</u>   /s/ *Emerson Wheat*

Emerson Wheat
*Attorney for* Elizabeth Bautista